### 30985. RAINES *v.* THE STATE.

DECIDED NOVEMBER 17, 1945.

*Thomas A. Jacobs Jr.,* for plaintiff in error.

*Charles H. Garrett, solicitor-general,* contra.

PER CURIAM. 1. As a matter of law the evidence does not demand the conclusion that the prosecutor was the aggressor. The jury were authorized to find that the defendant by his words and conduct provoked the difficulty and provoked the prosecutor to use the opprobrious words attributed to him. The jury were further authorized to find that the accused was not justified, since he provoked the difficulty, if the jury so found, to retort "You are another one." The jury were further authorized to find, under such a situation, that the defendant was not justified in either striking the prosecutor with a bottle of whisky or in throwing and hitting the prosecutor with the ice tongs. At the time the defendant threw the ice tongs, the prosecutor was doing nothing to him, and the jury were further authorized to find that the defendant created the situation or emergency and never thereafter declined the struggle, and therefore was not justified in striking the prosecutor with the ice tongs. All of these were jury questions, and the verdict should stand insofar as the general grounds are concerned. But we think that the judgment should be reversed under a special ground, which we will hereinafter deal with more specifically. As to whether the jury were authorized to find that the accused was the aggressor, we wish to call attention to several decisions of this court, as well as of the Supreme Court. In *Hamilton* v. *State,* 9 *Ga. App.* 402 (71 S. E. 593), this court said: "In a prosecution under the Penal Code (1910), section 387, for using opprobrious words and abusive language, the sufficiency of the provocation which will justify the use of such words is a matter exclusively for the jury. The jury can not be instructed as a matter of law that, if one simply said 'Howdy' to the defendant, this would not be sufficient justification for the defendant to use opprobrious words and abusive language. Whether this would be sufficient provocation would depend on the manner of the salutation and the surrounding circumstances. There may be justifiable provocation where no words have been spoken. The sufficiency of the provocation depends, not only upon the language employed, but upon the relationship of the parties, the state of

feeling existing between them, the tone, manner, and spirit in which the language is used, and other circumstances from which the jury may in some instances determine that words apparently or ordinarily innocent afforded reasonable cause for provocation under the circumstances or in the manner in which they were used. The question is so exclusively one of fact that any intimation or direction to the jury as to the weight or effect of any portion of the testimony illustrative of the subject of provocation is error."

In *Jackson* v. *State,* 14 *Ga. App.* 19 (80 S. E. 20), this court said: "On the trial of one indicted for using opprobrious words, it is for the jury to determine whether under all the facts and circumstances the words used were words tending to cause a breach of the peace, and whether there was provocation sufficient to excuse their use. It was therefore error to instruct the jury that if they should find that the defendant used the alleged opprobrious words, they would be authorized to find him guilty."

In *Sherrer* v. *State,* 17 *Ga. App.* 335 (2) (86 S. E. 735), this court said: "On the trial of one for using obscene and vulgar or profane language in the presence of females, it is for the jury to determine whether there was sufficient provocation to excuse their use." See also the several citations of our Supreme Court cited therein. See also *Bagley* v. *State,* 43 *Ga. App.* 105 (157 S. E. 904).

To the same effect, whether the provocation justified the use of opprobrious words, we call attention to the following Supreme Court decisions: *Arnold* v. *State,* 46 *Ga.* 457; *Reid* v. *State,* 71 *Ga.* 865 (4); *Collins* v. *State,* 78 *Ga.* 87, 88. In *Meaders* v. *State,* 96 *Ga.* 299 (22 S. E. 527), the Supreme Court said: "A wrongful trespass upon personal property in the presence of its owner may or may not amount to such provocation as will justify the latter in using to the wrong-doer on the spot opprobrious words or abusive language tending to cause a breach of the peace. When in the prosecution for using language of this kind such a trespass is alleged by the accused as his provocation for so doing, it should be left to the jury to determine whether or not there was in fact such a trespass, and if so, whether or not it was in their judgment sufficient to justify the accused." To the same effect, see *Williams* v. *State,* 105 *Ga.* 608 (31 S. E. 738); *Echols* v. *State,* 110 *Ga.* 257 (34 S. E. 289). In *Fish* v. *State,* 124 *Ga.* 416 (52 S. E. 737),

the Supreme Court said: "On the trial of one indicted for using opprobrious words and abusive language, it is for the jury to determine whether under all the facts and circumstances the words used were of such a character that the use of them was calculated to cause a breach of the peace, as well as to determine whether there was provocation sufficient to excuse their use. It is therefore error for the judge to instruct the jury as a matter of law that the words alleged in the indictment are opprobrious and abusive within the meaning of the statute, and that a given set of facts would not be a sufficient provocation for their use."

We therefore hold that it was a question for the jury whether the prosecutor was the aggressor and without justification used the opprobrious words attributed to him.

2. (a) Special ground 4 complains because the court failed to give in charge to the jury a certain request. This request was not only argumentative but as a matter of law was not adjusted to the facts in the case because it entirely assumed that the prosecutor was the aggressor. It was lacking in that it took no consideration that the jury were authorized to find that the accused was the aggressor because he provoked the difficulty.

(b) In special ground 5 exception is taken to an excerpt from the charge as follows: "Movant assigns error on the following charge of the court: As I have said, words which might be found by you to be opprobrious under certain circumstances, under different circumstances might not be so construed by you. Insofar as it constitutes one of such circumstances, the factor of difference in race between the prosecutor and the defendant would be a proper matter for your consideration, but only to the extent that such factor might serve to indicate to you that any words you may find were used were or were not, in fact, opprobrious words, as they have been defined." We think that this exception to the excerpt is well taken and requires a reversal of the case. We think that, under the facts of this case, "the factor of difference in race between the prosecutor and the defendant would be a proper matter for your consideration" should not have been charged. We are of the opinion that the case should be remanded for a new trial for the error assigned in this ground only. The other special grounds do not require a reversal.

*Judgment reversed. All the Judges concur.*

Broyles, C. J., concurring specially. It is contended by the solicitor-general that the words by Raines to Greene, "Where in hell do you think I left it," were opprobrious and abusive words and made Raines the aggressor in the fight between him and Greene. I can not agree with that contention. The language employed by Raines was rude and impolite, but was not opprobrious or abusive. Opprobrious words are words tending to subject the person to whom they are addressed to shame, disgrace or dishonor.

There is no statute of this State justifying an assault or an assault and battery because of impolite language used by one person to another; and, under the law, it is immaterial that the person using such language was a Negro and that the person to whom it was addressed was a white man. In *Burns* v. *State,* 80 *Ga.* 544, 548 (7 S. E. 88), the court said: "It was suggested in argument that a white man will not take insolence from a Negro, and we suppose it was meant for us to note that virtue or infirmity (whichever it may be) in expounding and administering the law, or it would not have been mentioned. What we have to say on that subject is this: The duty of an officer to a colored prisoner is not different in any respect from his duty to a white prisoner. He must do right to a colored man as well as to a white man, and obey the law. Judges, including ourselves, must do right to peoples of all colors; jurors ought to do it, and policemen shall do it, so far as it depends upon us to administer the rules of law to their conduct." While the facts of that case are different from those of this case, the principle of law involved is the same, to wit, that in the halls of justice even-handed justice should be administered alike to all persons, whether white or black.

In this case the undisputed evidence shows that, when Raines used the impolite language to Greene, the latter retorted by employing vile and opprobrious words to Raines. Greene, therefore, was the aggressor, and he was not justified in assaulting or in attempting to commit an assault and battery upon Raines because the latter merely replied "You are another one." Greene himself testified that, when Raines said "You are another one," he immediately reached for the ice hooks, and that he did so *with the intent to throw it at, and to hit, Raines.* Under these undisputed facts, Raines, when he saw Greene was in the act of assaulting

him with a heavy iron weapon, was justified in trying to protect himself from the imminent and threatened assault by throwing the bottle at Greene.

The majority opinion cites many cases holding that, where there is any evidence to support the verdict, the appellate court will not reverse a judgment overruling the general grounds of a motion for a new trial. However, equally as many rulings could be cited which hold that, where the evidence demands a verdict contrary to the one rendered, the judgment will be reversed on the general grounds. The general rule that in a criminal case, based upon the use of alleged opprobrious or abusive language, it is for the jury to determine whether the language used is opprobrious or abusive, does not apply where, as here, the words employed are not *per se* opprobrious or abusive, and where, as here, there is nothing in the evidence tending to disclose bad feelings between the parties, and nothing tending to show that the tone, manner, and spirit of the person in using the language was antagonistic or hostile to the one so addressed; and where, as here, there were no other circumstances tending to show that the person in using the language intended thereby to insult or abuse the one thus addressed, the jury would not be authorized to find that the language as so used was opprobrious or abusive.

In *Hamilton* v. *State,* 9 *Ga. App.* 402 (71 S. E. 593), this distinction was recognized. In that case, the original record shows that, shortly before the alleged opprobrious and abusive language was employed, the relationship between the prosecutor and the accused was unfriendly and antagonistic, and the court said: "The sufficiency of the provocation depends, not only upon the language employed, but upon the relationship of the parties, the state of feeling existing between them, the tone, manner, and spirit in which the language is used, and other circumstances from which the jury may *in some instances* [italics mine] determine that words apparently or ordinarily innocent afforded reasonable cause for provocation under the circumstances or in the manner in which they were used."

In the instant case, the undisputed evidence showed that Raines and Greene as employees of the ice company had worked together for twelve years, and there is nothing in the evidence showing, or tending to show, that their relationship during all that time had

not been pleasant and friendly, and there was no evidence tending to show what was the tone, manner, and spirit in which Raines used the alleged opprobrious or abusive language, or that there were any other circumstances tending to show that the language as used by Raines was opprobrious or abusive or sufficient to afford reasonable cause for Greene to apply the vile and opprobrious epithet to Raines. On all of those questions the evidence is absolutely silent, and the burden was upon the State to affirmatively show otherwise, and that burden it failed to carry. Suppose that Raines had said to Greene, "Where do you reckon I left it [the truck] ?" could that language have been reasonably construed as opprobrious or abusive? If not, did the mere adding of the word "hell" to the question change the innocent question into an unlawful and abusive one? It is common knowledge, known to this court and to all men, that persons frequently use that word to others, and especially to associates, without intending to insult or abuse them. Suppose that Raines and Greene had swapped places, and that Raines had asked Greene where he had left the truck, and Greene had replied, "Where in the hell do you reckon I left it?" would that language have afforded a reasonable cause to Raines to apply to Greene the vile epithet which Greene applied to Raines? To state the question, is to answer it in the negative. And this court in this case, by a unanimous opinion, holds that the trial judge erred in charging the jury that "the factor of difference in race between the prosecutor and the defendant would be a proper matter for your consideration," and has reversed the judgment because of that error. I concur in the majority opinion, reversing the case because of the above-mentioned error in the charge, but dissent from the ruling that the evidence authorized the defendant's conviction.