### A97A2147. ANDERSON v. THE STATE.
(499 SE2d 717)

BIRDSONG, Presiding Judge.

Burnie Anderson appeals her conviction for disorderly conduct by uttering fighting words in violation of OCGA § 16-11-39 (a) (3). After her son was arrested for DUI, Anderson went to the jail to post bond. She asked the deputies to take her personal check because she was a friend of the sheriff, but her request was denied. At this point Anderson left the jail after letting the jailers know that in her opinion their prospects for continued employment after the next election were not favorable. The next morning, Anderson sent her son's girlfriend to the jail with the full cash bond, but a deputy told her that Anderson's son would not be released until she talked to the sheriff.

After inquiring from the sheriff's wife as to his whereabouts, Anderson found him at an automobile dealership, washing his car. Because of where Anderson was sitting in relation to the sheriff, she had to lean across and speak to the sheriff through the car's open window. When Anderson asked about the refusal to release her son, the sheriff asked her why she had been at the jail causing trouble. The sheriff then testified that Anderson "told me they was no good and that I was a no good son of a bitch and that she should get out of the car and kick my ass. . . . I told her if she had to talk that way, she could leave [and] 'if you don't leave, I'm going to call and have you removed,' and she said 'Well, go ahead.' So . . . I just went back

to washing my car because I felt it wasn't even worth the trouble. . . . She sat there a few minutes and . . . finally said, 'Well, I'll see you on down the road,' and she drove off."

When asked whether Anderson's demeanor showed she was angry, the sheriff testified: "I really didn't pay her that much attention." On cross-examination, the sheriff said he was offended and disappointed by Anderson's above quoted language and that he took seriously her threat.

Anderson testified that without leaving her car, she questioned the sheriff about the failure to release her son. According to Anderson, the sheriff said: " 'If you hadn't of been up there running your god damn mouth, he would have been out. . . . And if you don't get your god damn ass from up here, I will call somebody . . . and have you locked up with your god damn son.' " Anderson left. Later that day the sheriff got a warrant against her.

Anderson was indicted as follows: that she committed "the offense of terroristic threats"; and that on May 14, 1995 she used "to Sheriff John Bowens, the following opprobrious words and abusive language, to-wit: that he was a no good son-of-a-bitch and she would kick his ass." Although the jury acquitted her of making terroristic threats, Anderson was convicted of using obscene and abusive language.

On appeal Anderson contends this prosecution infringes on her First Amendment rights and also contends the trial court erred by denying her motion for a directed verdict of acquittal and failing to charge the jury that the scope of OCGA § 16-11-39 was limited to words that had a direct tendency to cause immediate breach of the peace and that the jury must consider the context in which the words were uttered when determining whether the words were fighting words. *Held*:

1. Anderson's motion to dismiss the indictment was based on her contention that the phrases "no good son of a bitch" and "I'll kick your ass" are protected speech under the Constitution of the United States and the Constitution of the State of Georgia. OCGA § 16-11-39 in relevant part provides: "A person commits the offense of disorderly conduct when such person . . . [w]ithout provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called 'fighting words.' " OCGA § 16-11-39 (a) (3). The statute must be limited in application to situations involving "fighting words" — " 'those by which their very utterance inflict injury or tend to incite

an immediate breach of the peace.'" *City of Macon v. Smith*, 244 Ga. 157, 158 (259 SE2d 90). Further, even if a person used obscene, vulgar and profane language, the crucial issue is whether that language constituted " 'words, expressions or acts which have a direct tendency to cause immediate acts of violence by the person to whom the speech or act is addressed.'" *Crolley v. State*, 182 Ga. App. 2, 4 (354 SE2d 864).

In *State v. Klinakis*, 206 Ga. App. 318, 319 (b) (425 SE2d 665), this Court held that "the use of 'fighting words' does not constitute *protected* speech under the First and Fourteenth Amendments to the United States Constitution or under Art. I, Sec. I, Par. V of the Georgia Constitution. Fighting words constitute one of those narrow speech areas not constitutionally protected. . . . Thus, it is beyond controversy that a state may enact a statute making criminal the utterance of 'fighting words,' provided it does so in a constitutional manner, that is, the criminal statute must be facially constitutional and must be applied constitutionally to a particular offender. [Cits.]" (Emphasis omitted.)

One legislative purpose in these laws is to curtail criminal activity before it escalates into or causes immediate acts of actual violence; classes of constitutionally unprotected speech are limited to ensure the purpose of the limitation; and thus OCGA § 16-11-39 must be limited in application to words that have " 'a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed.'" Id. at 322, quoting *Gooding v. Wilson*, 405 U. S. 518 (92 SC 1103, 31 LE2d 408).

Under the circumstances of this case, we do not find that the words used by Anderson constituted protected speech. *Brooks v. State*, 166 Ga. App. 704 (305 SE2d 436). Here, the jury determined that the act of appellant in calling the sheriff a "no-good son of a bitch" and admonishing that she should kick his "ass" constituted fighting words. Further, the fact that the sheriff might be used to hearing this type of language is not a defense. *Bolden v. State*, 148 Ga. App. 315, 316 (2) (251 SE2d 165). By their verdict the jury found that the words Anderson used were likely to provoke violence in the mind of the sheriff. This is sufficient. *Brooks v. State*, supra; *Johnson v. State*, 143 Ga. App. 826 (240 SE2d 207).

As we find that the prosecution of Anderson was authorized, her allegation that she was the victim of a bad faith prosecution is without merit. Therefore, the trial court did not err by denying Anderson's motion to dismiss.

2. Anderson's motion for a directed verdict of acquittal was based on her contention that her comments to the sheriff were provoked by the actions of the jailers and deputies at the jail in refusing to release her son even when she produced in cash the amount of bail required

and their comments to her. A motion for a directed verdict in a criminal case, however, should only be granted when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. OCGA § 17-9-1 (a); *Alexander v. State*, 263 Ga. 474, 478 (3) (435 SE2d 187). The test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) is the appropriate one to use when the sufficiency of the evidence is challenged, whether the challenge is from the denial of a directed verdict or the denial of a motion for new trial based upon alleged insufficiency of the evidence. *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436). In this case, whether the conduct at the jail was sufficient to provoke Anderson's later misconduct was a question for the jury (*Dyer v. State*, 99 Ga. 20, 21 (2) (25 SE 609)), and thus the trial court did not err by denying Anderson's motion for a directed verdict of acquittal.

3. The trial court did not err in failing to charge the jury as requested by Anderson. Reviewing Anderson's requested charge shows that it had two elements: the first part concerned limiting the application of OCGA § 16-11-39 to words having a direct tendency to cause immediate acts of violence by the person to whom the speech is directed, and the second part concerned considering the circumstances and background surrounding the use of the words.

After the trial court called for any objections to the charge, Anderson's counsel did not reserve objections. Instead, he objected to the failure to give two requested charges. One of the charges is no longer relevant because it concerned the offense of which Anderson was acquitted. In his objection to the failure to give the other charge Anderson's counsel stated, "I think there are some Appellate decisions that restrict the application of the statute on abusive language." Later, after counsel again stated that the failure to charge he objected to concerned the appellate restrictions on which words could be prohibited by the statute, the trial court ruled that the charge given covered the matters in the requested charge.

(a) An objection merely stating that the party objects to the trial court's failure to charge a specific numbered request is insufficient to preserve the issue on appeal (*Lissmore v. Kincade*, 188 Ga. App. 548, 551 (373 SE2d 819)) because the objection must be stated distinctly so that a reasonable trial judge could understand the nature of the objection and rule intelligently on the specific point. *Christiansen v. Robertson*, 237 Ga. 711, 712 (229 SE2d 472). Thus, "[t]o be reviewable the objection must be unmistakable in its purport in directing the attention of the trial court to the claimed error and must be stated with sufficient particularity to leave no doubt as to the portion of the charge challenged or as to what the specific ground of challenge is. The grounds of error urged must fully apprise the court of the error committed and the correction needed to cure the error. We

construe the statute [OCGA § 5-5-25 (a)] as placing the duty on counsel of exercising a high degree of clarity in objecting to charges." (Citation and punctuation omitted.) *Stone v. Burell*, 161 Ga. App. 369 (288 SE2d 636). In this instance, however, counsel was not clear in objecting to the charge because on appeal Anderson now also challenges the failure to give the second part of the requested charge concerning consideration of the circumstances and background surrounding the use of the words.

Thus, in regard to this part of the requested charge, we find that the objection raised below was not sufficient to direct the trial court's attention to the claimed error and was not stated with sufficient particularity to leave no doubt about the portion of the charge challenged or what the specific ground of challenge was. Therefore, we find that this issue was not preserved on appeal. Compare *Lucas v. State*, 265 Ga. 514, 515-516 (2) (458 SE2d 103).

(b) Regarding the objection concerning restrictions on the scope of OCGA § 16-11-39, we find no error. It is a fundamental rule that jury instructions must be considered as a whole in determining whether there was error in the charge (*Hambrick v. State*, 256 Ga. 688, 690 (353 SE2d 177); *Dept. of Transp. v. Hillside Motors*, 192 Ga. App. 637, 640 (385 SE2d 746)) and it is not error to fail to charge in the exact language of a requested charge if the principles of law embodied in the request are included in the charge given. *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 160 (256 SE2d 916). Further, the language used by appellate courts in decisions may embody sound law, but it is not always proper or necessary to use such language in a charge to the jury. *Dept. of Transp. v. Hillside Motors*, supra. The jury was advised that fighting words are those words which by their very utterance tend to incite an immediate breach of the peace and that unless the jury found that Anderson used words in the presence of the sheriff, which by their very utterance tend to excite an immediate breach of the peace, they must acquit her. Thus, considering the four corners of the charge, we find that the issue on which Anderson wanted a charge was adequately covered by the full charge.

Further, even if we were to reach the other aspect of the charge concerning the circumstances and background surrounding the use of the words, we find that the jury was instructed to consider the facts and circumstances of the case in the part of the charge concerning reasonble doubt. Although this charge might not have been as artful as the requested charge, it was sufficient in light of the totality of the full charge given to inform the jury of the necessity to consider Anderson's statements in light of the surrounding circumstances. Therefore, we find the charge as a whole correctly informed the jury of the substance of the matters contained in the request to charge.

Accordingly, for each of the above reasons we find no error.
*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED MARCH 11, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998

*James N. Finkelstein,* for appellant.
*Charles M. Ferguson, District Attorney, Ronald S. Smith, Assistant District Attorney,* for appellee.

